UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| TAMMY KAY ELLER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 1:17-cv-00152-SLC |
|  | ) |  |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Nancy A. Berryhill, Acting Commissioner of Social Security,* | ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Tammy Kay Eller appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Eller applied for DIB in February 2014, alleging disability as of August 1, 2010, which was later amended to September 21, 2012.[2] (DE 7 Administrative Record ("AR") 27, 191). Eller was last insured for DIB on December 31, 2013 (AR 82, 252), and therefore, she must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last

---

[1] All parties have consented to the Magistrate Judge. (DE 10); *see* 28 U.S.C. § 636(c).

[2] Eller had filed an earlier DIB application, which was denied at a hearing on September 20, 2012. (AR 88-104).

insured in order to recover DIB benefits).

The Commissioner denied Eller's application initially and upon reconsideration. (AR 130-41). After a timely request, a hearing was held on September 30, 2015, before Administrative Law Judge Stephanie Katich (the "ALJ"), at which Eller, who was represented by counsel, and Sharon Ringenberg, a vocational expert (the "VE"), testified. (AR 47-87). On November, 5, 2015, the ALJ rendered an unfavorable decision to Eller, concluding that she was not disabled because despite the limitations caused by her impairments, she could perform her past relevant work as a cashier, as well as a significant number of unskilled, light exertional jobs in the economy. (AR 27-41). Eller's request for review was denied by the Appeals Council (AR 1-20, 266-89), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Eller filed a complaint with this Court on April 12, 2017, seeking relief from the Commissioner's decision. (DE 1). In the appeal, Eller alleges that the ALJ: (1) improperly found that Eller had no severe mental impairments; and (2) improperly evaluated medical evidence that post-dated her date last insured. (DE 15 at 5-9).

At the time of the ALJ's decision, Eller was 52 years old (AR 191), had a ninth grade education (AR 218), and had work experience as cashier and a production assembler (AR 77, 219, 265). In her DIB application, Eller alleges disability due to: thoracic and lumbar degenerative disc disease, history of left shoulder tendonitis, chronic obstructive pulmonary disease ("COPD"), asthma, obesity, depression, post traumatic stress disorder ("PTSD"), hypertension, umbilical hernia surgery, left elbow disorder, history of stress incontinence surgery, history of gastroesophageal reflux disease, and cardiomyopathy. (DE 15 at 2).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12

3

months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On November 10, 2015, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 27-41). At step one, the ALJ concluded that Eller had not

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

engaged in substantial gainful activity after her alleged onset date of September 21, 2012, through December 31, 2013, her date last insured. (AR 30). At step two, the ALJ found that Eller had the following severe impairments as of her date last insured: thoracic and lumbar spine degenerative disc disease, a history of left shoulder tendinitis, COPD, asthma, and obesity. (AR 30). At step three, the ALJ concluded that Eller did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 34).

Before proceeding to step four, the ALJ determined that Eller's symptom testimony was "not entirely credible" (AR 37) and then assigned Eller the following RFC through her date last insured:

> [T]he claimant had the [RFC] to perform light work . . . with the following exceptions: she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel crouch, and crawl; she can never reach overhead with the left upper extremity; she must have a sit/stand option, but she is able to remain at the workstation and on task despite positional changes; she must avoid all exposure to temperature extremes and pulmonary irritants such as fumes, odors, dusts, and gases; she must avoid concentrated exposure to unprotected heights, slippery or uneven surfaces, and dangerous moving machinery; and she must work in an environment with air conditioning.

(AR 36). Based on the assigned RFC and the VE's testimony, the ALJ found at step four that Eller was able to perform her past relevant work as a cashier through the date last insured. (AR 39). The ALJ alternatively found at step five that Eller could perform a significant number of other unskilled, light jobs in the economy, including mail sorter, routing clerk, and furniture rental consultant. (AR 41). Therefore, Eller's application for DIB was denied. (AR 41).

*C. The ALJ's Step-Two Determination*

Eller argues that the ALJ erred by finding at step two that her mental impairments were non-severe. In reaching this step-two finding, the ALJ reasoned as follows: (1) Eller and her treating sources "repeatedly reported that her depression and anxiety are both stable and that her mood and sleep disturbances were improved"; (2) "mental status examinations show that her depression and anxiety do not affect her memory, speech, or thought processes," and she "demonstrated at least average intelligence and concentration"; (3) "[a]t times, she appeared with a normal or euthymic mood and affect"; (4) she used medications to treat her anxiety and depression; (5) her Global Assessment of Function ("GAF") score ranged from 50 to 70,[4] which indicates "only mild to moderate symptoms or . . . impairment";[5] and (6) while J. Gange, Ph.D., a reviewing state agency psychologist, found that Eller's mental impairments were severe, Dr. Gange's opinion was internally inconsistent and inconsistent with the record. (AR 33). After reaching this step-two finding, the ALJ made no further mention of Eller's mental impairments, and no mental limitations were incorporated into the RFC. (*See* AR 34-39).

"The Step 2 determination is a *de minimis* screening for groundless claims . . . ."

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*. A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* And, a GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id*.

"The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, clinicians of record used GAF scores in assessing Eller, so they are relevant to the ALJ's decision. *See id*. (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

[5] The ALJ was incorrect on this point, as a GAF score of 50 represents serious symptoms or a serious impairment. *See supra* footnote 4.

*O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities[.]'" *Meuser*, 838 F.3d at 910 (alteration in original) (quoting SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996)); *see also O'Connor-Spinner*, 832 F.3d at 697. "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citation omitted).

The record reveals that Eller was seen at Matthew 25 clinic from December 2010 to at least July 2015 for, among other things, depression, PTSD, a bipolar disorder, and insomnia; she was prescribed various medications.[6] (AR 353, 412-29, 567-68, 580-86, 607-43). From August 2011 to at least May 2015, Eller received mental health treatment at the Bowen Center, which included prescription medication and psychological counseling. (AR 348-97, 535-40, 680-701). Eller was diagnosed with PTSD, chronic; and major depressive disorder, recurrent, moderate, without psychotic features. (AR 350, 356, 385). She was assigned a GAF score of "50-70."[7] (AR 356, 385).

In connection with her disability application, Dr. Gange reviewed Eller's record, and completed psychiatric review technique and mental RFC forms. (AR 120-25). On the psychiatric review technique form, Dr. Gange found that Eller's anxiety disorder was severe, but

---

[6] Eller had also received mental health treatment 25 years earlier after she lost her four-year-old son in a car accident. (AR 353).

[7] *See supra* note 4.

7

that her affective disorder was non-severe. (AR 120). Dr. Gange concluded that Eller had moderate restrictions in activities of daily living; mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (AR 121). On the mental RFC form, Dr. Gange opined that Eller had moderate limitations in carrying out detailed instructions, and in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (AR 125). Dr. Gange noted a GAF score of 55 assigned by another provider in April 2011. (AR 125). Dr. Gange concluded that Eller could perform semi-skilled tasks on a consistent basis.[8] (AR 125).

The Seventh Circuit Court of Appeals in *O'Connor-Spinner* reversed an ALJ's step-two finding of non-severe where the claimant had a diagnosis of "major depression, recurrent severe." 832 F.3d at 693. In doing so, the Court explained: "That determination is not supported by substantial evidence and, indeed, strikes us as nonsensical given that the diagnosis, *by definition*, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *Id*. at 697 (emphasis added) (quoting American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 679-80 (4th ed. Text Rev. 2000)). The

---

[8] As stated earlier, the ALJ viewed Dr. Gange's opinion as internally inconsistent because Dr. Gange found moderate limitations in Eller's ability to persist in a workday on the mental RFC form, yet on the psychiatric review technique form found just mild difficulties in maintaining concentration, persistence, or pace. (AR 33). The Court agrees that Dr. Gange's conclusions appear inconsistent in that regard. However, the inconsistencies in Dr. Gange's opinion are not particularly relevant to the Court's outcome, as the diagnoses and treatment of Eller's mental health problems were documented by her treating mental health practitioners at the Matthew 25 Clinic and the Bowen Center, not Dr. Gange.

8

Court further explained that because the ALJ "eliminated depression at Step 2, he did not take into account *any* effects which the disorder might have on O'Connor-Spinner's ability to maintain employment." *Id*. at 698. As such, the Court concluded that the ALJ had failed to build an accurate and logical bridge between the evidence of O'Connor-Spinner's mental impairments and the ALJ's conclusion that she was capable of full-time employment. *Id*. The Court emphasized that "[h]ad the ALJ not excluded depression at Step 2, he would have been required to fully explore the restrictions caused by O'Connor-Spinner's depression." *Id*. (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)).

Similarly, in *Meuser*, the Seventh Circuit criticized the ALJ's step-two finding that Meuser's schizophrenia was non-severe. 838 F.3d at 910 ("We have difficulty imagining how an uncontested diagnosis of schizophrenia . . . could *not* survive Step 2."). The Court found that the ALJ had "conflated Steps 2, 4, and 5" because although the ALJ could still find that Meuser, with medication, could perform work and was not disabled, such "an assessment of the functional limitations caused by an impairment is more appropriate for Steps 4 and 5, not Step 2." *Id*. (collecting cases).

In light of this Seventh Circuit precedent, the Court is persuaded by Eller's argument that the ALJ erred in finding her mental impairments non-severe at step two. Having said that, "any error that an ALJ commits at step two is harmless as long as she goes on to consider the combined impact of a claimant's severe and non-severe impairments." *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015)); *see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal." (citation

9

omitted)).

Here, however, the ALJ never mentioned Eller's mental impairments again after step two. Therefore, there is no indication that the ALJ considered the impact of Eller's mental impairments, even if non-severe, when assigning the RFC. *Compare Rice v. Berryhill*, No. 17 C 1193, 2018 WL 2049931, at *5 (N.D. Ill. May 2, 2018) (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was not a harmless screening error because the ALJ did not include any mental limitations in the RFC), *with Loftis*, 2017 WL 2311214, at *2 n.1 (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was harmless, because the ALJ went on to consider the combined impact of the claimant's severe and non-severe impairments). Consequently, the Commissioner's final decision will be remanded to that the ALJ may revisit her step-two finding concerning Eller's mental impairments and the mental RFC.[9]

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings. The Clerk is directed to enter a judgment in favor of Eller and against the Commissioner.

SO ORDERED. Entered this 16th day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[9] Because a remand is warranted based on the ALJ's step-two analysis, the Court need not reach Eller's remaining argument that the ALJ improperly considered evidence dated after her date last insured—specifically, a Pulmonary Function Test dated June 2015 and the opinion of Dr. S. Pamidi, her treating cardiologist, dated July 2015. Having said that, the Court, having briefly reviewed the parties' arguments on this point, tends to agree that this evidence was too remote in time to affect the ALJ's determination.